IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01643-PAB-CBS

J. BRUCE NORMAN and
DIANE NORMAN,

    Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion to Exclude Testimony of Plaintiffs' Experts [Docket No. 28] filed by defendant State Farm Fire and Casualty Company ("State Farm"). State Farm seeks to exclude all three of the Normans' identified experts.

**I. BACKGROUND**

Plaintiffs J. Bruce and Diane Norman's home and property suffered damage as a result of the Waldo Canyon Fire near Colorado Springs, Colorado in June and July 2012. The Normans' home was insured under a policy issued by State Farm (the "policy"). Docket No. 31-6 at 2. On June 23, 2012, the Normans left their home as a result of a mandatory evacuation. Docket No. 33 at 3, ¶ 1. On July 5, 2012, the Normans returned to their home, reporting to State Farm that their home suffered heavy smoke damage. *Id.* at 3, ¶ 3. State Farm inspected the home and, in July and August 2012, State Farm issued payments totaling $87,447.97. Docket No. 33 at 4-5, ¶¶ 7-8,

12.

In October 2012, the Normans retained public adjuster Troy Payne of Loss Analytics (the "public adjuster"). Docket No. 36 at 9, ¶ 22. In November 2012, at the direction of the public adjuster, SJR Environmental Consulting ("SJR") inspected and tested the Normans' home, concluding that ash and char were present throughout the house and soot residue present inside the furnace and air ducts. Docket No. 36-7 at 4. On February 20, 2013, the public adjuster provided State Farm with a proof of loss estimate of $809,949.23 (the "proof of loss"). Docket No. 33-4 at 3; *see also* Docket No. 36-8. An itemized breakdown of the proof of loss was provided in March 2013. Docket No. 36 at 10, ¶ 28; Docket No. 38 at 5, ¶ 28. State Farm retained an engineering firm and industrial hygienist firm to conduct additional inspections of the Normans' home. Docket No. 33 at 8, ¶ 32. On May 31, 2013, State Farm paid the Normans an additional $85,574.43 for "covered damages," an amount which was based, in part, on those additional inspections. Docket No. 33-7 at 1.

On June 21, 2013, the Normans filed the present case. Docket No. 1. On December 30, 2013, the Normans disclosed Gregory T. Becker as an expert in structural engineering, James L. Lieberman as an expert in chemistry and industrial hygiene,[1] and David Poynor as an expert in the field of general contracting. Docket No. 28-1 at 1-2.

**A. Mr. Poynor's Report**

Mr. Poynor was retained to provide a valuation of the damages sustained by the

---

[1]Mr. Lieberman's report is not attached to State Farm's motion.

Normans' home and covered property as a result of the Waldo Canyon Fire. Docket No. 28-2. Mr. Poynor's CV indicates that he has extensive experience as a general contractor in residential construction. Docket No. 31-13 at 1. Mr. Poynor's CV also states that he has "[e]valuated, estimated, and undertook remedial repairs for fire/smoke damaged homes" and served as an "appraiser in over 100 insurance property claims." *Id.* Mr. Poynor is Xactimate[2] certified and, from 2009 to 2013, held an insurance adjuster license. *Id.* at 2.

As part of their Fed. R. Civ. P. 26(a)(2) initial disclosures on December 30, 2013, the Normans provided State Farm with Mr. Poynor's expert report. Docket No. 28-1 at 1-3; Docket No. 28-2. Mr. Poynor's report is approximately 45 pages in length. The first page and a quarter consists of an explanation of materials reviewed and inspections performed, as well as an overview of the attached value/cost estimates calculated by Xactimate. Docket No. 28-2 at 1-2.[3] Mr. Poynor purports to have determined the portions of the Normans' property damaged by fire and used Xactimate to calculate the replacement value of the damaged contents of the Normans' home, including clothing, electronics, and furniture, *id.* at 3-14, and to calculate the cost of cleaning and remodeling the damaged parts of the home. *Id.* at 15-45. Mr. Poynor's report contains the following explanation of how he determined the extent of damage caused by the Waldo Canyon Fire:

---

[2] Mr. Poynor explains that Xactimate is "the leading claims estimating software" and "the standard by which insurance claims are estimated." Docket No. 28-2 at 1. State Farm does not appear to dispute that Xactimate is a reliable valuation tool. Docket No. 37 at 4.

[3] Mr. Poynor's report also included 295 pages of photos. Docket No. 28 at 3-4.

> My firm has inspected the home and prepared the attached Xactimate estimate. I have talked to the owners about the history of repairs and the condition of the property before the fire. It is my understanding that the home was in great condition, all necessary maintenance was being kept up, and the home was not suffering from any type of neglect.
>
> It is my opinion that the attached estimate is a true and fair estimate of the scope of repairs and cost to repair damages that were a direct result of the fire. I base my opinion on my inspection of the home which noted obvious damage consistent with fire damage and ruled out conditions that were not caused by the fire. I also base my opinions on an inspection with engineer Gregory Becker, where he used a FLIR thermal camera to identify window seal damage caused by the intense heat of the fire, conversations with the owners to the effect that there were no significant damages to the home prior to the fire, and recommendations for repairs from Mr. Becker's report.

Docket No. 28-2 at 1.

Mr. Poynor estimates the value of the damage to the contents of the Normans' home at $104,947.97, which is the total replacement value of the items listed in his report. *Id.* at 12. Mr. Poynor's cleaning and remodeling estimate covers the exterior and interior of the Normans' home. *Id.* at 15-25. Mr. Poynor, for example, estimates the cost to remove and replace the roof at $39,365.46. *Id.* at 16. The estimated cost to clean the main room, replace windows and drywall, paint the walls, and replace carpet is $19,948.17. *Id.* at 19-20. The total estimated cost of cleaning and repairing the Normans' home is $523,517.00. *Id.* at 45.[4]

In total, Mr. Poynor estimates the Normans' damages at $628,464.97. *Id.* at 12, 45. However, Mr. Poynor does not indicate that he has any familiarity with the policy at issue in this case and Mr. Poynor's report does not appear to account for those items or

---

[4]On August 26, 2013, the Normans' counsel provided to State Farm an estimate from Mr. Poynor valuing damage at $514,878.71. Docket No. 33-8 at 1, 3. Both parties appear to agree that the estimates provided in Mr. Poynor's full report are the subject of the present motion.

4

areas of the home which State Farm has already paid the Normans to clean, repair, or replace.

### B.  Mr. Becker's Report

Mr. Becker's report purports to offer an opinion on the extent of damage to the Normans' home caused by the Waldo Canyon Fire.  Docket No. 28-3.  The report is based on, among other things, an inspection of the home, interviews with the Normans, a previous engineering report ordered by State Farm, and the use of a FLIR infrared camera, which Mr. Becker indicates is used to "document the extent of energy leakage through windows and doors."  *Id.* at 8, 17.  Mr. Becker concluded, in part, that the roof over the rear deck was heat damaged, that the windows and doors showed excess energy leakage after being exposed to high temperatures, that the exterior of the home should be repainted, and that the carpet and insulation in the attic retained contaminants and must be replaced.  *Id.* at 13, 16.

### C.  Procedural History

In the present motion, State Farm seeks to exclude Mr. Poynor's opinions in their entirety.  Docket No. 28 at 5.  State Farm also argues that all of the Normans' expert opinions should be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.  *Id.* at 8.

## II. FEDERAL RULE OF EVIDENCE 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where, as here, an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d

1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While a plaintiff, as the proponent of the challenged testimony, has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); a plaintiff need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

7

## III. ANALYSIS

### A. Mr. Poynor's Opinion

The Court turns to State Farm's argument that Mr. Poynor's opinions are inadmissible pursuant to Fed. R. Evid. 702.[5] State Farm argues that Mr. Poynor's damage estimates are not connected to the facts of this case and, as a result, are irrelevant. Docket No. 28 at 8. State Farm does not challenge the Xactimate calculations themselves; rather, State Farm argues that Mr. Poynor fails to explain how and why he concluded that the items listed in his report were damaged by the Waldo Canyon Fire. *Id.* at 7.[6] The Normans argue that Mr. Poynor's estimates would assist the jury in establishing contract damages, an argument which is not directly responsive to State Farm's position. Docket No. 31 at 9. "Relevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *U.S. v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted). The Normans are

---

[5]The Normans argue that State Farm's motion violates this Court's Practice Standards for Motions to Exclude Expert Testimony. Docket No. 31 at 8. This Court's Practice Standards require that a party seeking to exclude an expert opinion must "identify the specific ground(s) on which each opinion is challenged, e.g., relevancy, sufficiently of facts and data, methodology." Practice Standards (Civil cases), Judge Philip A. Brimmer § III.G. However, Mr. Poynor is a single-issue expert offering an opinion on the "cost to repair damages that were a direct result of the fire." Docket No. 28-2 at 1. The Court is otherwise satisfied that, with respect to Mr. Poynor's opinions, State Farm has sufficiently articulated the basis for its motion.

[6]Stated another way, State Farm argues that the report fails to indicate "why these areas of the house need to be repaired or how they were damaged by a covered loss . . . . Even if there was competent evidence that these items were damaged, there are no opinions that the damage resulted from the Waldo Canyon Fire." *Id.* at 4 (citing *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1193 (10th Cir. 2009) (applying Fed. R. Evid. 702)).

correct insofar as they will be required to prove contract damages at trial. However, contract damages are measured by losses covered under the policy, not the value of the Normans' property in the abstract. The policy provides coverage for "accidental direct physical loss to the property." Docket No. 33 at 9, ¶ 45 (citing Docket No. 33-9 at 6). Thus, the measure of contract damages is not the abstract cost of repairing or replacing the Normans' property, but the cost of repairing or replacing damage to property that was caused by the Waldo Canyon Fire. The Normans admit that they must show "that the damage was caused by the fire." Docket No. 31 at 6. Absent a causal link between Mr. Poynor's estimates and the Waldo Canyon Fire, Mr. Poynor's estimates are irrelevant and likely to confuse the jury.

To the extent that the Normans argue that Mr. Poynor's report can be utilized to show the abstract cost of repairing or replacing their property, Docket No. 31 at 11, abstract replacement and repair values are not what Mr. Poynor's report purports to estimate. Mr. Poynor states that he was retained to provide a "repair price for damages sustained by the Norman home *from* the Waldo Canyon fire" and that his estimate is of the "scope of repairs and cost to repair damages that were a *direct result of the fire*." Docket No. 28-2 at 1 (emphasis added). Thus, there is no basis for concluding that Mr. Poynor's report is an accurate measure of the abstract costs of repair and replacement.[7] Moreover, even if Mr. Poynor's estimates were admissible as a measure of replacement and repair costs in the abstract, the Normans would still be required to

---

[7]*Voth v. State Farm Fire & Cas. Ins. Co.*, 2009 WL 411463, at *5 (E.D. La. Feb 16, 2009), which the Normans cite to, is distinguishable because, unlike here, the expert in *Voth* did not purport to give causation opinions.

establish that such estimates were connected to the fire, which their response brief makes little attempt to address. *See Neiberger v. Fed. Ex. Group Package Sys., Inc.*, 566 F.3d 1184, 1193 (10th Cir. 2009) (excluding expert testimony on total financial loss resulting from auto accident because plaintiff failed to establish that medical bills incurred were medically "reasonable and necessary and stemmed from the accident").[8]

The Court's gatekeeper function requires a determination of whether an expert opinion is "sufficiently tied to the facts of the case" and "based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *see also Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). A court is not required to admit an expert opinion "which is connected to existing data only by the *ipse dixit* of the expert" and may conclude that "too great an analytical gap [exists] between the data and the opinion proffered." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (quotations omitted). In *Falcon v. State Farm Lloyds*, 2014 WL 2711849, at *21 (W.D. Tex. June 16, 2014), the court considered the admissibility of an insurance adjuster's opinion concerning the extent and cost of smoke damage to a residence. The adjuster's primary basis for his damage estimate was "personal experience" and going "room by room" to come up with damages totals. *Id.* at *22-*23. The court excluded the adjuster's opinion, finding that the adjuster "can point to no actual method he used, other than 'eyeballing' what he perceived to be damaged in the home" and "provided no documentation of his methods

---

[8] As a result, although Mr. Poynor's cost estimates concerning, for example, moving expenses and trash disposal, may not vary depending on the degree of damage to the Normans' property, *see* Docket No. 28-2 at 37-38, such estimates do not appear to be independently admissible. The Normans do not argue otherwise.

and therefore precluded any assessment of the accuracy of his conclusions." *Id.* at 23.

Mr. Poynor's report contains no meaningful explanation of the methods he employed to determine the existence of and the extent of smoke damage. He states that his opinions are based on an inspection, which "noted obvious damage," conversations with the Normans, and Mr. Becker's report. Docket No. 28-2 at 1. The report does not provide any details about how Mr. Poynor's inspection was conducted. For example, the report does not explain how Mr. Poynor determined that certain items were "obviously" damaged. Whether he did this by sight or by smell is not discussed. Concerning Mr. Poynor's indirect information, the report does not provide any details of his conversation with the Normans or explanation of how his conversation with them informed his opinion about the pre-fire condition of the property. For example, the owners told him that there were "no significant damages" to the home before the fire, *id.*, but it is not clear whether "damages" equates to wear and tear or non-functionality and what "significant" means in the context of the many varieties of items Mr. Poynor valued. His report also fails to indicate which portions of Mr. Becker's damage assessment he chose to adopt and why. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005) (noting that burden of laying foundation for admissibility of expert opinion lies with the proponent and that "a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support" is insufficient). After describing these sources of information about the condition of the property, Mr. Poynor does not explain the process by which he determined the pre-fire and post-fire conditions of the items noted in his estimates. Because Mr. Poynor does not explain what methods he used in

determining the extent of fire damage to the Normans' property, the Court is left without a basis for determining whether such methods were reliable. *See Falcon*, 2014 WL 2711849, at *23.

The Normans argue that Mr. Poynor's causation opinion is consistent with standard industry methodology, where an insurance adjuster visits a scene, examines physical damage, interviews relevant witnesses, and makes "recommendations to the insurance company as to whether the loss was caused by a covered occurrence." Docket No. 31 at 13; *see also id.* at 5. The Normans' argument fails for multiple reasons. First, although the Normans' brief asserts that Mr. Poynor applied this methodology in reaching his conclusions, his report contains no such indication. The Normans claim that Mr. Poynor "specifically ruled out any damage that was not fire-related by determining the property's pre-existing condition, including wear-and-tear, [which] is the same methodology used by adjusters and appraisers/umpires in determining causation." *Id.* at 13. However, the report itself provides no suggestion of what items or areas of the Normans' home Mr. Poynor ruled out as undamaged by the fire; thus, there is no basis upon which to conclude that Mr. Poynor applied such methods. Second, the Normans' assertion that the above-described methodology is common in the insurance industry is unsupported argument. Moreover, the Normans fail to establish the method's general reliability. *Cf. Vigilant Ins. v. Sunbeam Corp.*, 231 F.R.D. 582, 587 (D. Ariz. 2005) (admitting damage estimate of insurance adjuster in part because valuation was based on the sampling method, "which involves discerning the value of a sample of damaged items and attributing the damage to all items"). Third, even assuming that Mr. Poynor applied the described methodology and that such

a method is commonly used, the Normans fall short of establishing that the method is reliable as applied to this case. *See Medina-Copete*, 757 F.3d at 1105 (holding expert testimony was admitted in error, in part, because the trial court "rel[ied] on other courts' treatment of facially similar testimony in very different contexts").[9]

The cost estimates in Mr. Poynor's report do not provide support for his causation opinion. For example, Mr. Poynor lists multiple items of clothing and indicates that each item should be replaced. *See, e.g.*, Docket No. 28-2 at 4. Implicit in Mr. Poynor's report is the opinion that the listed items of clothing must be replaced, rather than laundered or dry cleaned, but the basis for this opinion is similarly unexplained. *Cf. Vigilant*, 231 F.R.D. at 587 (expert witness depreciated the value of clothing damaged in a fire by 30-40% after interviewing insured and determining that insured did not keep worn out clothing). Mr. Poynor also lists several electronic items as requiring replacement, but does not indicate that he or anyone else tested the functionality of the listed items or cite to information supporting the conclusion that exposure to certain levels of smoke will damage electronic components. *See, e.g.*, Docket No. 28-2 at 6-7.

With respect to his cleaning and remodeling cost estimates, Mr. Poynor does not

---

[9] The Normans' citation to *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008), is inapposite. In *Broussard*, a structural engineer concluded that a home was damaged by high winds prior to a storm surge, in part, by evaluating data from the Stennis Space Center, eyewitness testimony, and physical evidence left on the subject property. *Id.* Over an objection to the reliability of his methods, the Fifth Circuit determined that his testimony was admissible. *Id.* Here, as discussed above, the Court cannot determine the reliability of Mr. Poynor's methods because he does not indicate what methods he used, including what aspects of the Normans' property he ruled out as undamaged.

explain, even in the most general terms, how he determined that damage to various aspects of the Normans' home was caused by smoke or proximity to the fire as opposed to, for example, normal wear. Mr. Poynor purports to rely, in part, on Mr. Becker's report, which may be appropriate, but Mr. Poynor does not explain the portions of Mr. Becker's report that he adopted or rejected. For example, as State Farm points out, Mr. Poynor indicates that the entire roof the Normans' home should be replaced, Docket No. 28-2 at 16, whereas Mr. Becker primarily describes damage to the roof on the rear deck. Docket No. 28-3 at 9-10. Implicitly, Mr. Poynor rejected at least a portion of Mr. Becker's report, but he does not explain why. Moreover, to the extent Mr. Poynor claims that damage to the home was "obvious," this, by itself, is insufficient to establish reliability. *See Falcon*, 2014 WL 2711849, at *23 (rejecting as "naked" and "conclusory" adjuster's statement that roof was "obviously . . . covered with very hot ash and had been fire/heat/smoke damaged"). Mr. Poynor's report also provides no indication that he accounted for those items for which State Farm has already compensated the Normans. *Compare* Docket No. 28-2 at 20 (estimating cost of new carpet for main room), *and id.* 8 (estimating cost of replacing treadmill), *with* Docket No. 36-3 at 10, p. 85:18-20 ("ultimately, we did end up replacing that carpet"), *and* Docket No. 28-4 at 4, p. 105:6 ("[State Farm] did replace the treadmill"). The Normans argue that these inconsistencies can simply be disregarded; however, disregarding portions of the report does not establish that the remainder of the report is admissible.

Because Mr. Poynor does not indicate what methodology he applied to his causation opinions, the Court cannot determine the reliability of the method by which Mr. Poynor arrived as such opinions. As a result, the Normans have failed to establish,

as it is their burden to do, that Mr. Poynor's estimates are sufficiently tied to the case so as to assist the jury in resolving a fact of consequence.[10] *See Garcia*, 635 F.3d at 476. For the foregoing reasons, the Court concludes that Mr. Poynor's opinions are inadmissible under Fed. R. Evid. 702.[11]

## B.  Relevance of Expert Opinions Disclosed During Litigation

State Farm argues that, because the Normans' experts did not render their opinions prior to litigation, such opinions are not relevant. Docket No. 28 at 9. There appear to be two aspects of State Farm's argument. First, State Farm seems to argue that, because the opinions of Mr. Becker and Mr. Lieberman were not available to it prior to litigation, State Farm's failure to consider such opinions in its pre-litigation claims handling decisions cannot be considered evidence of bad faith. On this point the Court agrees. The reasonableness of State Farm's conduct must be evaluated based upon the information before it during the relevant time. *See Pham v. State Farm Mut. Auto Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) (noting that, for purposes of bad faith, the reasonableness of an insurer's conduct is evaluated under the circumstances that existed at the time). As such, the Normans are precluded from claiming that State Farm acted in bad faith by failing to consider Mr. Becker's and Mr. Lieberman's reports,

---

[10] Neither State Farm nor the Normans filed the photographs contained within Mr. Poynor's report. As a result, neither party appears to believe that the photos would be helpful in resolving the present motion. Because the Court concludes that the opinions in Mr. Poynor's report are inadmissible for failure to explain the methods that he applied and to establish their reliability, the Court finds no basis for concluding that the photographs would have further explained his methods or otherwise provided relevant support for his opinions.

[11] The Court need not reach State Farm's argument that Mr. Poynor's opinion should be barred pursuant to Fed. R. Civ. P. 26(a)(2).

which were not available to State Farm prior to litigation.

Second, State Farm appears to argue that the Normans' expert opinions are not relevant for any purpose. The Court rejects this argument. State Farm provides no authority, and the Court is aware of none, prohibiting a party from establishing actual damages through expert opinions created during litigation.[12] Provided that the Normans can establish that Mr. Becker and Mr. Lieberman had access to substantially the same data and examined the Normans' home under substantially the same conditions as did State Farm during the claims handling process, Mr. Becker's and Mr. Lieberman's reports may bear on the thoroughness of State Farm's investigation and on the degree of damage caused by the fire. This aspect of State Farm's motion is denied.

## IV. CONCLUSION

For the forgoing reasons, it is

**ORDERED** that State Farm's Motion to Exclude Testimony of Plaintiffs' Experts [Docket No. 28] is **GRANTED** in part and **DENIED** in part as indicated in this order.

DATED November 19, 2014.

                                BY THE COURT:

                                s/Philip A. Brimmer
                                PHILIP A. BRIMMER
                                United States District Judge

---

[12] State Farm takes issue with the fact that the actual damages claimed prior to litigation differ from the actual damages claimed by the Normans in this litigation. Although the exclusion of Mr. Poynor's opinion renders this argument largely moot, State Farm does not explain why an insured is required to ask for the same amount of compensation under the policy before and during litigation.